

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**'08 CIV 6487**

-------------------------------------------------x

THOMAS TUNE, professionally known   :
as "TOMMY TUNE,"                              :

                                            :

           Plaintiff,            :

                                      :

        - against -          :

                                      :

MARVIN SHULMAN and            :
MARVIN SHULMAN MANAGEMENT   :
LLC,                                   :

                                      :

        Defendants.       :

-------------------------------------------------x

Case No.

JUL 21 2008

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

## INTRODUCTION

In this action, plaintiff Thomas Tune, the renowned Broadway director,

choreographer, dancer, singer and actor professionally known as Tommy Tune, seeks

redress against his former business manager, Marvin Shulman, and Mr. Shulman's

company, Marvin Shulman Management LLC, for their fiduciary and contractual

breaches and other defalcations committed in the course of their prior relationship with

Mr. Tune.  As will be further explicated below, after unlawfully persuading Mr. Tune to

pay them a business management commission far in excess of industry norms through

misrepresentation and breaches of fiduciary duty, defendants assessed commission

charges against Mr. Tune in excess of even that inflated amount and, in derogation of the

parties' agreement and governing securities regulations, paid themselves commissions on

Mr. Tune's capital gains, including the proceeds realized on the sale of his residence.

Defendants also improperly "outsourced" to certain third-parties a number of the central

business management functions that Mr. Tune engaged defendants to perform, and then

wrote checks from Mr. Tune's funds to pay for the fees charged by these third-parties for the very services that Mr. Tune was already paying defendants.

In this Complaint, Mr. Tune asserts claims for damages against defendants for breach of contract, breach of fiduciary duty and unjust enrichment. As a concomitant thereto, Mr. Tune seeks a fiduciary accounting from defendants and a judicial declaration that defendants' unconscionable commission arrangement with Mr. Tune, which they obtained through misrepresentation and fiduciary breach, should be voided and the excess commissions that defendants received thereunder disgorged to Mr. Tune.

In further support of this Complaint, Mr. Tune alleges and avers as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Thomas Tune, who is professionally known as "Tommy Tune," is an individual who resides in the City, County and State of New York.

2.      Defendant Marvin Shulman ("Shulman") is an individual who, upon information and belief, resides at 90 Alton Road, Miami Beach, Florida.

3.      Defendant Marvin Shulman Management LLC (the "LLC") is, upon information and belief, a limited liability corporation organized and existing under the laws of the State of Florida, of which Shulman is the sole member. (For ease of reference, Shulman and the LLC are sometimes referred to herein individually, and collectively as the "Shulman Parties.")

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the parties are of diverse citizenship and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

5.      This Court has personal jurisdiction over the Shulman Parties in that, *inter alia,* Shulman resided and conducted business in the State of New York during a substantial period of the time relevant to the claims asserted in this Complaint; and, at all times relevant to this Complaint, the Shulman Parties systematically and regularly transacted business in this State, including in respect of the matters at issue in this litigation.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND

7.      Mr. Tune is an internationally known and critically acclaimed Broadway director, choreographer, dancer, singer and actor, whose professional accomplishments include his significant creative involvement in the Broadway productions "The Best Little Whorehouse in Texas"; "My One and Only"; "Grand Hotel"; "The Will Rogers Follies"; "Stepping Out"; "Nine"; "A Day in Hollywood/A Night in the Ukraine"; and "Tommy Tune Tonight!" Mr. Tune is the recipient of nine Tony Awards, the National Medal of Arts, eight Drama Desk Awards, the George Abbot Lifetime Achievement Award and a host of other accolades.

8.      Mr. Tune is as artistically accomplished as he is lacking in sophistication in the financial and business components of his career. Thus, as is common practice in the entertainment industry, Mr. Tune has engaged the services of a number of professionals to assist him in the financial and related aspects of his professional activities.

3

9.     In this regard, in or about 1966, Mr. Tune undertook the engagement of a business manager to handle certain financial and related aspects of his career.  Later that year, Mr. Tune was introduced to Shulman.  After their introduction, Mr. Tune engaged Shulman to provide tax return preparation services to Mr. Tune.  During the course of this initial engagement, Shulman represented to Mr. Tune that Shulman was a highly experienced business manager, with the knowledge, experience and expertise necessary to properly handle a broad range of financial and related aspects of Mr. Tune's career.

10.    Based on Shulman's representations to Mr. Tune concerning his supposed background and experience, and his repeated confirmation that he would faithfully, loyally and honestly attend to Mr. Tune's financial affairs, in or about 1968, Mr. Tune engaged Shulman to act as his business manager.

11.    As is generally the practice in the entertainment industry, the Shulman Parties' responsibilities as Mr. Tune's business manager embraced significant components of Mr. Tune's financial affairs, including receiving income generated by Mr. Tune from his professional activities; preparing all necessary tax returns and other tax filings; attending to the payment of expenses incurred by Mr. Tune; and maintaining accurate and complete accounting books and ledgers in respect of Mr. Tune's financial and business activities.

12.    It is standard practice in the entertainment industry that a business manager providing the type of business management services described above will receive as his compensation a commission, generally not exceeding five percent (5%), on the income earned by the artist from the artist's professional activities.

13.     Consistent with industry practice, Mr. Tune agreed to pay the Shulman Parties a five percent (5%) business management commission on income that Mr. Tune earned from his professional activities, in consideration of the services that the Shulman Parties would be rendering to him.

14.     From the commencement of their activities as Mr. Tune's business manager in or about 1968, and continuing thereafter, the Shulman Parties gradually insinuated themselves into virtually every aspect of Mr. Tune's financial affairs.

15.     Exercising yet additional control over Mr. Tune, Shulman designated investment managers, attorneys and other professionals with whom Shulman maintained longstanding prior relationships to handle a number of critical aspects of Mr. Tune's financial and related affairs.  These professionals generally communicated directly with Shulman, thus limiting the flow of information to Mr. Tune regarding his finances.

16.     During the course of the parties' relationship, Mr. Tune repeatedly made inquiry of Shulman concerning various aspects of his business and financial affairs. Shulman most often responded to these inquiries either by dismissively admonishing Mr. Tune that he should not be concerned with these matters; or by providing Mr. Tune with such byzantine explanations that it was not possible for Mr. Tune to determine with any degree of certainty the actual status of the matters into which he was making inquiry.

17.     The Shulman Parties also cultivated Mr. Tune's ignorance of his financial status and affairs by failing to provide periodic reporting of transactions concerning Mr. Tune's finances or professional endeavors.

18.     After taking control of virtually every aspect of Mr. Tune's financial affairs, in or about 1999 - 2000, Shulman demanded that Mr. Tune pay him a higher

5

percentage business management commission, in light of certain supposed, albeit undefined "additional" services that Shulman falsely claimed he was providing to Mr. Tune. Exploiting what he knew to be Mr. Tune's non-confrontational manner and lack of business sophistication, and affirmatively misrepresenting the true nature and scope of the services that Shulman was actually providing, Shulman persuaded Mr. Tune to acquiesce to a 10% business management fee structure - - twice the industry norm.

19.     During the course of the parties' relationship, Mr. Tune devoted his time, effort and attention virtually exclusively to the pursuit of his professional, artistic and creative endeavors. Seizing on the natural vacuum created by Mr. Tune's dedication to his art and entrustment of the Shulman Parties, the Shulman Parties continued to maintain nearly total control over Mr. Tune's financial affairs, all the while continuing to assure Mr. Tune that they were properly, honestly and loyally performing their critical responsibilities for him.

20.     In or about 2006, at the urging and upon the advice of Shulman, Mr. Tune decided to sell the residence that he maintained in Manhattan (the "New York Residence"). Mr. Tune engaged a real estate broker to market and sell the New York Residence, to whom he was obligated to pay an agreed-upon broker's commission.

21.     The New York Residence was sold in or about 2006. The Shulman Parties had minimal involvement in the marketing or sale of the New York Residence. The net proceeds generated from the sale of the New York Residence (the "Sale Proceeds") were remitted to the Shulman Parties on Mr. Tune's behalf and for Mr. Tune's benefit.

22.     Virtually immediately upon his receipt of the Sale Proceeds, and without consulting with Mr. Tune or receiving his assent, Mr. Shulman wrote a check to himself

from the Sale Proceeds in the amount of approximately $223,000, in purported payment
of a business management commission on the Sale Proceeds.

23.     Shulman's purported commissioning of the Sale Proceeds was in direct
contravention of his agreement with Mr. Tune, pursuant to which Shulman was entitled
to commission only income earned by Mr. Tune from his professional activities. It was
also contrary to well-established and consistent practice in the entertainment industry, by
which business managers do *not* commission proceeds received from the sale of an
artist's personal assets or other capital gains.

24.     Upon information and belief, Shulman used the unlawful commission he
took on the Sale Proceeds to immediately purchase a Maserati.

25.     As a direct result of Mr. Tune's discovery of Shulman's improper
commissioning of the Sale Proceeds, and a number of other festering concerns about the
Shulman Parties that had been plaguing Mr. Tune, in or about April of 2006 Mr. Tune
discharged the Shulman Parties as his business manager. Recognizing that virtually
every other professional who rendered services to Mr. Tune had been appointed by and
communicated directly with Shulman, Mr. Tune also discharged a number of his other
advisors.

26.     After discharging the Shulman Parties, Mr. Tune engaged new
representatives to advise and counsel him, including a new business manager and a new
attorney.

27.     Following this "changing of the guard," Mr. Tune decided to perform an
audit of the Shulman Parties in respect of the business management services they had
performed for him over the years, to determine whether, in addition to their improper

7

commissioning of the Sale Proceeds, they had engaged in other improprieties or contractual breaches.

28.    In furtherance of the foregoing, in or about April of 2007, Mr. Tune's new counsel wrote to the Shulman Parties and requested that they produce to Mr. Tune all documents pertaining to Mr. Tune and his financial affairs that were in the Shulman Parties' possession, custody or control.

29.    Despite their confirmed receipt of counsel's letter, the Shulman Parties ignored it and provided no response.

30.    In the face of the Shulman Parties' intransigence, Mr. Tune's representatives contacted the Shulman Parties on several subsequent occasions and repeated Mr. Tune's demand for the production of all documents in the Shulman Parties' possession, custody or control that were related to Mr. Tune or the services that the Shulman Parties had ostensibly rendered on his behalf.

31.    In the face of these repeated communications, the Shulman Parties ultimately produced certain, but by no means all, of the requested documents to Mr. Tune.

32.    The documents belatedly and reluctantly produced by the Shulman Parties were inadequate in a number of material respects. The Shulman Parties did not produce documents for all of the years during which they had provided business management services to Mr. Tune. The documents that were produced were incomplete even in respect of the time periods that they purported to embrace, and failed to include, *inter alia,* income tax returns for each of the subject years; general ledgers for a number of those years; back-up documentation for expenses that were purportedly charged to Mr.

Tune; and a host of other documents that any competent and honest business manager would have prepared and maintained on behalf of his client.

33.    In addition to the foregoing deficiencies, the documents provided by the Shulman Parties confirmed that the Shulman Parties' record keeping and business practices were inadequate, substandard and unprofessional, and that the Shulman Parties had not prepared or maintained adequate financial and accounting records for Mr. Tune.

34.    Notwithstanding the Shulman Parties' woefully deficient document production and record-keeping practices, a review of the inadequate documents that the Shulman Parties ultimately did produce revealed that, in addition to the unlawful commissioning of the Sale Proceeds, the Shulman Parties had acted improperly in a number of other significant respects, and had paid themselves business management commissions to which they had no lawful entitlement.

35.    Without setting forth an exhaustive recitation of the Shulman Parties' defalcations, it appears that:

(a)    The Shulman Parties paid themselves commissions on capital gains earned by Mr. Tune from his investments, in breach of the parties' agreement that limited commissions to income earned from Mr. Tune's professional activities and in derogation of regulations promulgated by the Securities and Exchange Commission. These improper payments included commissions levied on gains in Mr. Tune's pension plan, of which Mr. Shulman was a fiduciary. The Shulman Parties never reduced these improper commissions by, or otherwise factored in any capital losses to Mr. Tune in calculating the unlawful commissions that they paid themselves based on Mr. Tunes personal investments.

(b)    The Shulman Parties "outsourced" their accounting and tax preparation duties, as well as other material functions for which the Shulman Parties were paid by Mr. Tune (through the commission structure), to third-party service providers; and the Shulman Parties then caused the fees that these third-party service providers charged to be paid from Mr. Tune's funds, resulting in Mr. Tune paying for these services twice, *i.e.,* once to the Shulman Parties (for services they failed to perform) and a second time to the third-party service providers.

(c)    As to income earned by Mr. Tune from his professional activities, the Shulman Parties, in certain instances, paid themselves commissions that were in excess of even the improperly inflated ten percent commission fee structure.

### COUNT I
### (Breach of Contract)

36.    Mr. Tune incorporates herein by reference in their entirety the allegations set forth in the preceding paragraphs of this Complaint.

37.    Pursuant to the parties' agreement, the Shulman Parties were entitled to commission only income earned by Mr. Tune from his professional activities in the entertainment industry.

38.    Notwithstanding the foregoing, the Shulman Parties paid themselves commissions on the Sale Proceeds generated from the sale of Mr. Tune's New York Residence; and on the capital gains earned by Mr. Tune from his investments and investment accounts.

39.    In addition, ignoring (for present purposes only) that the ten percent commission structure was the product of misrepresentation and fiduciary breach and thus

should be voided (see Count III, below), the Shulman Parties paid themselves commissions in excess of 10% on certain income of Mr. Tune.

40.    Pursuant to the parties' agreement, and in consideration of the commissions that were to be paid to them, the Shulman Parties were obligated to perform accounting, tax preparation and related services on behalf of Mr. Tune and his affiliated entities.

41.    Notwithstanding the foregoing, the Shulman Parties "outsourced" a number of these and other critical business management functions to accountants, tax preparers and other third-parties and, despite the fact that the Shulman Parties were paid for these services through the parties' commission structure, the Shulman Parties improperly used Mr. Tune's funds to pay the fees and expenses incurred by these third-party service providers.

42.    The foregoing conduct of the Shulman Parties constitutes a breach of the parties' business management agreement.

43.    Mr. Tune has been damaged by reason of the aforesaid contractual breaches in an amount to be determined at trial.

### COUNT II
### (Breach of Fiduciary Duty)

44.    Mr. Tune incorporates herein by reference in their entirety the allegations set forth in the preceding paragraphs of this Complaint.

45.    By virtue of their status as Mr. Tune's business manager, and the resulting position of trust and confidence that they occupied in respect of Mr. Tune, the Shulman Parties owed Mr. Tune a fiduciary duty.

11

46.     By reason of their conduct as alleged earlier herein, including their improper and unlawful commissioning of the Sale Proceeds and other capital gains; their payment to themselves of excess commissions; their outsourcing of critical business management functions to third parties whose fees were charged to Mr. Tune; their misleading and evasive responses to Mr. Tune's inquiries regarding his financial affairs; their misrepresentations in persuading Mr. Tune to acquiesce to the inflated 10% commission structure; their exercise of undue control over Mr. Tune's affairs, including by designating, and then controlling the flow of information from, professionals with whom they had maintained longstanding relationships; and the other and further unlawful conduct engaged in by the Shulman Parties, including that summarized earlier herein, the Shulman Parties breached their fiduciary duty to Mr. Tune.

47.     Mr. Tune has been damaged by reason of defendants' aforesaid fiduciary breaches in an amount to be determined at trial.

## COUNT III
## (Declaratory Judgment)

48.     Mr. Tune incorporates herein by reference in their entirety the allegations set forth in the preceding paragraphs of this Complaint.

49.     As alleged earlier herein, exploiting Mr. Tune's acknowledged lack of sophistication in financial matters and his non-confrontational manner, and affirmatively misrepresenting the nature, scope and importance of the services they actually were providing to Mr. Tune, the Shulman Parties improperly and unlawfully persuaded Mr. Tune to raise the business management commission from five percent to ten percent.

50.     As alleged earlier herein, that conduct of the Shulman Parties constituted a breach of their fiduciary duty to Mr. Tune and constituted self-dealing.

12

51.     It is Mr. Tune's position that, by reason of the foregoing, his supposed "agreement" to double the business management commission to the Shulman Parties from five percent to ten percent is void.

52.     Upon information and belief, the Shulman Parties deny and dispute Mr. Tune's averment as aforesaid.

53.     As a result of the foregoing, a justiciable controversy exists concerning the respective rights of the parties under their business management agreement.

54.     Pursuant to 28 U.S.C. § 2201, *et seq.*, Mr. Tune requests a judicial declaration that the aforesaid increase in the business management commission from five percent to ten percent is void and unenforceable and that, as a result, the Shulman Parties should be compelled to disgorge any business management commissions that they received on Mr. Tune's income in excess of five percent.

### COUNT IV
### (Unjust Enrichment)

55.     Mr. Tune incorporates herein by reference in their entirety the allegations set forth in the preceding paragraphs of this Complaint.

56.     By paying themselves commissions on the Sale Proceeds and on capital gains; by paying themselves excess commissions; by paying themselves commissions and then using Mr. Tune's funds to pay for third-party fees incurred in providing services to Mr. Tune that the Shulman Parties were obligated to render; and by improperly assessing a ten percent rather than a five percent business management commission on income earned by Mr. Tune, the Shulman Parties were unjustly enriched to the detriment of Mr. Tune.

57.    As a result of the foregoing, Mr. Tune has been damaged in an amount to be determined at trial, which amount the Shulman Parties should be directed to disgorge to Mr. Tune.

## COUNT V
### (Accounting)

58.    Mr. Tune incorporates herein by reference in their entirety the allegations set forth in the preceding paragraphs of this Complaint.

59.    The Shulman Parties were fiduciaries of Mr. Tune.

60.    In their fiduciary capacity, the Shulman Parties took receipt of substantial income belonging to Mr. Tune, paid themselves excess and improper commissions thereon, and failed to properly remit to Mr. Tune all amounts due to him therefrom.

61.    Mr. Tune repeatedly requested that the Shulman Parties produce to him all relevant books and records and other documents pertaining to the parties' prior relationship, including all books and records relating to the financial activities and affairs of Mr. Tune.

62.    Despite Mr. Tune's repeated demand for this documentation, the Shulman Parties have failed to produce a large portion of the requested documents to Mr. Tune.

63.    As a result, this Court should direct the Shulman Parties to provide a full and accurate fiduciary accounting to Mr. Tune, spanning the entirety of the parties' relationship, concerning all income and other consideration that the Shulman Parties received that was generated by the activities of Mr. Tune or any related or affiliated entity; all expenses of Mr. Tune and his related and affiliated entities that were paid by the Shulman Parties; all expenses allegedly incurred by the Shulman Parties that were charged to Mr. Tune; all business management and other commissions that the Shulman

14

Parties were paid by, received from, or assessed against Mr. Tune; all fees incurred or assessed by any third-party service provider who provided services to Mr. Tune; and any other matters pertaining to Mr. Tune and/or his affiliated entities.

## **PRAYERS FOR RELIEF**

WHEREFORE, based upon the foregoing allegations and averments, plaintiff Thomas Tune respectfully prays that this Court enter the following relief:

A.    That this Court enter judgment in favor of Mr. Tune and against defendants on Count I of this Complaint in an amount to be determined at trial, and award Mr. Tune all attorneys' fees and costs that he incurs in connection with this action.

B.    That this Court enter judgment in favor of Mr. Tune and against defendants on Count II of this Complaint in an amount to be determined at trial, and award Mr. Tune all attorneys' fees and costs that he incurs in connection with this action.

C.    That, pursuant to Count III of this Complaint, this Court enter a declaratory judgment that the increase in the business management fee paid by Mr. Tune to the Shulman Parties from five percent to ten percent is void and unenforceable and that, as a result, the Shulman Parties must disgorge to Mr. Tune any business management commissions that they received or were paid in excess of five percent from or by reason of any activities of Mr. Tune.

D.    That this Court enter judgment in favor of Mr. Tune and against defendants on Count IV of this Complaint in an amount to be determined at trial, and award Mr. Tune all attorneys' fees and costs that he incurs in connection with this action.

E.     That, pursuant to Count V of this Complaint, this Court direct the Shulman Parties to provide a full and accurate fiduciary accounting to Mr. Tune, spanning the entirety of the parties' relationship, concerning all income and other consideration that the Shulman Parties received that was generated by the activities of Mr. Tune or any related or affiliated entity; all expenses of Mr. Tune and his related and affiliated entities that were paid by the Shulman Parties; all expenses allegedly incurred by the Shulman Parties that were charged to Mr. Tune; all business management and other commissions that the Shulman Parties were paid by, received from, or assessed against Mr. Tune; all fees incurred or assessed by any third-party service provider who provided services to Mr. Tune; and any other matters pertaining to Mr. Tune and/or his affiliated entities.

F.     That this Court enter such other and further relief as it deems just and appropriate in the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues and claims so triable.


Dated: July 18, 2008
         New York, New York


                              ROSENBERG & GIGER P.C.


                              By:_____
                                  John J. Rosenberg (JR5292)
                                  Matthew H. Giger (MG3731)
                                  488 Madison Avenue, 10th Floor
                                  New York, New York  10022
                                  (212) 705-4824

                                  *Attorneys for Plaintiff*


16